GEORGE E. CALNON, APPELLEE, V. FIDELITY PHENIX FIRE INSURANCE COMPANY, APPELLANT.

FILED NOVEMBER 18, 1925.   No. 23371.

1.  Appeal:   REVERSAL.   The rule that a verdict will not be disturbed where there is evidence tending to support it does not apply where the verdict is opposed to the undisputed physical facts shown to exist.
2.  Insurance:   RECOVERY.   In an action on a fire insurance policy by the owner of an elevator, to recover for loss of grain destroyed by fire, he cannot recover for the value of grain stored therein and belonging to another, unless the insured is liable to the owner of the stored grain, or his assigns, for the value thereof.

APPEAL from the district court for Hall county.   BAYARD H. PAINE, JUDGE.   *Reversed.*

*Kennedy, Holland, DeLacy & McLaughlin* and *J. L. Cleary,* for appellant.

*Prince & Prince, B. J. Cunningham* and *A. S. Johnston,* contra.

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

GOOD, J.

Plaintiff brought this action on two policies of fire insurance, each for $4,000, issued by the defendant, covering plaintiff's grain and stock food in plaintiff's elevator building at Alda, Nebraska, which was destroyed by fire on September 22, 1921.

Plaintiff alleged that at the time of the fire there was in the elevator building 13,750 bushels of grain and 3 barrels of stock food, of the total value of $9,419; that of this grain 7,250 bushels was wheat, of the value of $1.02 a bushel; 800 bushels, barley; 4,500 bushels, corn; and 1,200 bushels, oats. Defendant admitted the issuance of the policies, the ownership of the building, and that the elevator was destroyed by fire, but denied that plaintiff had on hand the amount of grain and stock food as set forth in plaintiff's petition, and alleged that there was on hand and burned not to exceed 3,000 bushels of grain. Other issues were raised which it will not be necessary to consider. Trial to a jury resulted in a verdict of $8,490 for plaintiff, being the full amount of the policies, with interest thereon. Upon the hearing on motion for a new trial, the court directed a remittitur of $931.66 as a condition to overruling the motion. The remittitur was made by plaintiff, leaving his net recovery $7,558.34. Defendant appeals.

The errors assigned are that the verdict is excessive and is not sustained by the evidence; error in permitting plaintiff to amend his petition after trial had begun; and error in the giving and refusal of instructions.

Plaintiff testified that at the time of the fire there was in the elevator 7,250 bushels of wheat, as alleged in the

petition; that, in arriving at this amount, he figured from his books the entire amount of grain that he had purchased from the time he bought the elevator, in June, 1919, down to the time of the fire, and deducted therefrom the amount that he had sold and shipped out, but he concedes that grain was sold to the farmers from time to time and that his record of these sales was burned, so that he was unable to more than guess or estimate as to the amount that was sold from the elevator to the farmers during the more than two years; nor does he appear to make any allowance for shrinkage. Witnesses for defendant, who had been in the elevator and examined its contents three or four days before the fire, testified that the amount of grain therein was less than 6,000 bushels. Were this the only testimony, it would present a question for the jury, and its verdict would be final; but there is other evidence by plaintiff from which it can be demonstrated that his evidence as to the amount of grain in the elevator is inaccurate. He and other witnesses testified as to the dimensions of the elevator and how it was divided. On this point there is no conflict.

From this evidence it appears that the elevator was divided into 11 bins. The exact dimensions (except depth) are given. The depth of 6 bins is given as 33 or 34 feet; of 3 bins as 23 or 24 feet; and of 2 bins as 25 feet. Taking the dimensions of each bin and allowing for the greatest depth, the maximum capacity of each bin can be readily ascertained. It appears that there were 6 bins with a maximum capacity of 1,812 bushels each; 2 bins with a capacity of 1,490 bushels each; 2 bins with a capacity of 1,550 bushels each, and 1 bin with a capacity of 1,733 bushels. The total capacity of all the bins aggregated 18,685 bushels.

Plaintiff testified that all of the grain that was put in the elevator was purchased and weighed over his scales, and that he had an accurate scale record of the grain; that between the 1st day of August, 1921, and the 22d day of the following September, when the fire occurred, he purchased grain of various kinds, amounting in the aggregate to 8,006 bushels. He also testified that he had an accurate record of

grain shipped out of the elevator between those dates, and produced his books and gave the quantity of grain shipped in each car, from which it appears that 15,480 bushels of grain were shipped out of the elevator during the same period, and at least one wagon-load of 58 bushels was sold and taken from the elevator by a farmer. It thus appears that 15,538 bushels had been sold and taken out of the elevator between August 1 and September 22. If the elevator was filled to its capacity on the 1st day of August, there could have been no more than 18,685 bushels of grain therein. If to that amount is added the amount purchased and put into the elevator between those dates, the total amount would be 26,691 bushels. If from this amount is deducted the quantity of grain shipped out, there would remain but 11,153 bushels that possibly could have been in the elevator at the time of the fire, demonstrating that plaintiff's testimony, that there were 13,750 bushels in the elevator at the time of the fire, is incorrect. But plaintiff also testified that there were 4,500 bushels of corn in the elvator, of which more than 4,000 bushels had been therein since prior to the 1st day of August. It is evident that on and after the 1st day of August at least three bins must have been used for corn. His testimony is also to the effect that at all times between those dates a considerable quantity of barley and oats was in the elevator, so that two of the bins must have been used for oats and barley, leaving but six bins that could have been available for wheat. If we assume that the five bins used for corn, oats and barley were the smaller bins, that would leave the six larger bins for wheat. The maximum capacity of these six bins was 10,872 bushels, which is the most that plaintiff could possibly have had on hand on the 1st day of August, 1921. From his books he shows that the number of bushels of wheat purchased, and which went into the elevator, between August 1 and September 22, was 7,035 bushels, and that during the same period there were sold and taken from the elevator 14,650 bushels. If we add the number of bushels purchased, and which went into the elevator, to the maximum number of

bushels which could have been on hand August 1, it makes a total of 17,907 bushels, and, deducting from that amount the number of bushels shipped out of the elevator, 14,650 bushels, leaves 3,257 bushels of wheat as the maximum quantity that could have been in the elevator at the time of the fire, instead of 7,250 bushels, as testified by plaintiff. These physical facts demonstrate the inaccuracy and unreliability of plaintiff's testimony as to the number of bushels of wheat and other grain in the elevator at the time of the fire.

We have not overlooked the argument, made by counsel for plaintiff, to the effect that, where grain is of a superior quality, a bushel of dry measure will hold more than a bushel of weight, and thus the capacity of the elevator and of the wheat bins might be increased to the extent of 10 per cent. But even this allowance is wholly insufficient to account for the great discrepancy between the demonstrated facts and the amount of grain, as testified by plaintiff.

It has long been the established rule in this jurisdiction that a finding of a jury in a law action, on conflicting evidence, will not be disturbed, on appeal, unless manifestly wrong. It is likewise the rule that, where the verdict of a jury is against the weight and reasonableness of the evidence, it will be set aside and a new trial granted: *Bentley v. Hoagland,* 94 Neb. 442. The rule that a verdict will not be disturbed when there is evidence tending to support it does not apply where the verdict is opposed to the undisputed physical facts shown to exist. *Dodds v. Omaha & C. B. Street R. Co.,* 104 Neb. 692; *Oliver v. Union P. R. Co.,* 105 Neb. 243.

In the instant case, the only evidence to support the verdict was that given by the plaintiff himself. The undisputed physical facts amount to a demonstration that his evidence is untrue. The verdict is not sustained by the evidence and must be set aside.

It is unnecessary to consider the question as to whether there was error in permitting the amendment to the petition after trial had begun.

Calnon v. Fidelity Phenix Fire Ins. Co.

The error complained of in the giving and refusal of instructions relates to a quantity of grain that was in the elevator at the time of the fire, having been placed there for storage, and on which the owner had procured insurance. The owner had settled with the insurance company and received full payment therefor. The owner testified on the trial that he had no claim against plaintiff for the loss of this grain. It was developed, over objection, by incompetent testimony that the owner had assigned his claim to the insurance company, which had paid the loss. The trial court directed that plaintiff was entitled to recover for all the grain in the elevator, regardless of whether it was there for storage purposes. It is evident that plaintiff could only recover for such loss as he, himself, had sustained by the fire, and if the owner of the stored grain had no claim therefor, as against plaintiff, then plaintiff could not recover for that grain in this action, unless the owner of such grain had duly assigned his claim to another who had a valid claim therefor against plaintiff. Of that there was no competent evidence in this trial. There was therefore error in the instruction given.

For the reasons given, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

The following opinion on motion for rehearing was filed February 12, 1926. *Former opinion modified.*

PER CURIAM.

This action is now before us on motion for rehearing. The former opinion is reported, *ante,* p. 53, reference to which is made for a statement of the issues and facts. We are satisfied with our former opinion except the rule announced in the second paragraph of the syllabus. After further consideration we conclude the rule therein announced may be misleading.

Defendant complains of certain instructions given and refused. In the instruction given and complained of, the jury were told that plaintiff could recover for loss by fire to grain owned by others and held in storage in plaintiff's

elevator. By the provisions of section 7225, Comp. St. 1922, plaintiff, as a public warehouseman, was liable to the owners of the stored grain for loss thereof by fire. In the instant case, when the stored grain was destroyed by fire, plaintiff was liable to the owner for the value thereof, and was entitled to recover therefor from defendant. His right of recovery for the loss of such stored grain is unaffected by the fact that the owner of the stored grain had been paid for his loss by an insurance company which had insured the stored grain, because the owner's right of action would, by subrogation, inure to his immediate insurer who paid the loss. Such insurer would be subrogated to the rights of the owner, and would be entitled to recover against the plaintiff. The instruction was therefor properly given; and the instruction refused, which told the jury that defendant was not liable for the stored grain, was properly refused.

Our former opinion, in so far only as it conflicts with the views herein expressed, is withdrawn, and in all other respects is adhered to.