138

WILLIAM J. HARRELL, APPELLEE, V. PEOPLE'S CITY MISSION HOME ET AL., APPELLEES: ELMER PELTON, APPELLANT.

FILED MAY 29, 1936. No. 29565.

Baylor & TouVelle, George A. Healey and Casey & Corenman, for appellant.

Chambers & Holland, C. L. Clark, George E. Hager, R. A. Locke and Mockett & Finkelstein, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

PAINE, J.

William J. Harrell sued for personal injuries received in an automobile accident, and the jury found no cause of action. Elmer Pelton, in his answer and cross-petition, brought action for personal injuries arising out of the same accident against Ben C. Finkelstein and William J. Harrell. The court dismissed the action as to Finkelstein and Claude Parker, defendants, and the jury returned a verdict for Elmer Pelton in the sum of $5,000 against

William J. Harrell only. Pelton appeals from the dismissal of Finkelstein by the court.

William J. Harrell brought suit against the People's City Mission Home, a corporation, Elmer Pelton, and Claude Parker, alleging that on November 22, 1933, at about 1:30 in the afternoon he was driving a 1929 Whippet sedan north on Twenty-first street, and that Elmer Pelton and Claude Parker were driving a truck belonging to said Mission in a careless and negligent manner, on the wrong side of the street, and suddenly without warning drove into his sedan, violating the ordinances of the city of Lincoln, and injuring him upon the knee, leg, wrist, abdomen, and chest, and shocking his nervous system, for which injuries he was required to incur large medical and hospital bills, and alleging that he was damaged in the sum of $25,000.

Various motions and demurrers were ruled upon; then defendant Claude Parker filed answer, admitting that a collision occurred at the time and place alleged, but denied all the other allegations of the petition, and alleged that if the plaintiff suffered any injuries they were caused by the plaintiff's own careless and negligent acts.

The People's City Mission Home, a corporation, filed answer and admitted that a collision occurred at the time and place stated, and charged that the plaintiff drove his Whippet sedan upon the left, west, or wrong side, of Twenty-first street; that he failed to turn before colliding with the truck operated by Pelton; that he failed to yield one-half of the roadway, or to have his automobile under reasonable and proper control, or to give any warning, and that he was driving at an unlawful rate of speed; denied that said Ford truck was being driven or operated under the direction of the said City Mission, or used on its business, or in its service for its benefit, at the time of the accident, and that Pelton, who was operating the said Ford truck, was never in the employ of the said Mission, and that he was operating the automobile for his personal use and benefit in moving certain household goods owned by

said Pelton from his former residence to one then being occupied by him, and that the business of moving said household goods by said Pelton was in no way connected with the business of the said Mission, and that Pelton was operating said Ford truck at the time and place without the knowledge or permission of said City Mission.

Elmer Pelton was given leave to file cross-petition against Ben C. Finkelstein, who was made party defendant, and said Elmer Pelton in his answer and cross-petition admitted the collision occurred, but denied all other allegations of plaintiff's petition, and further alleged that if plaintiff suffered any injuries the same were duly contributed to and proximately caused by the plaintiff's own careless and negligent acts; and further, by way of cross-petition, alleged that the plaintiff, William J. Harrell, was driving a Whippet sedan which was the property of Ben C. Finkelstein, with his permission and consent, and was the agent and servant of said Finkelstein, and was then upon the business of said Finkelstein, and within the scope and authority granted to him by said Finkelstein; alleged that the plaintiff, Harrell, was driving said Whippet sedan in a careless, reckless, and negligent manner on the wrong side of the street, and violating the law in many other respects too numerous to set out, and that such acts of said plaintiff Harrell caused the accident and collision, which the said Pelton could not avoid.

Elmer Pelton further alleges that he was an able-bodied man, 25 years of age, employed by Earl Coryell Company, was earning $150 a month, and that as a result of the accident he was confined in St. Elizabeth's Hospital for two weeks, his nervous system shocked, skull fractured, knee ligaments and tendons torn, bruised, and injured, he suffered a loss of blood, and that said injuries are permanent and lasting; that he continues to have severe headaches, excruciating pains over his entire body, is unable to stoop, and has expended for medical and hospital aid $600, and will be compelled to spend additional sums, and that his damage is in the sum of $10,000, which he prays

that he may recover from the plaintiff, William J. Harrell, and the defendant Ben C. Finkelstein.

A separate answer was filed by Ben C. Finkelstein to the cross-petition of Elmer Pelton, in which he alleges that Harrell was driving an automobile owned by Finkelstein at the time of the accident, but denies that he was operating the automobile as an employee, agent, or otherwise, or that he was on the business of said Finkelstein; alleges that the injuries, if any, suffered by Pelton were due to his own negligence, recklessness, and carelessness.

The People's City Mission Home, a corporation, filed a long additional and supplemental answer, containing a large number of new allegations, among others that on September 29, 1934, a judgment was rendered in the district court for Lancaster county in a case brought by Claude Parker against William J. Harrell, and that the aforementioned parties are the identical persons involved in the above entitled action, and that the verdict of the jury was for $5,000 and costs, and that said judgment arose from personal injuries received by Claude Parker, plaintiff, in said accident, and that the action now pending and the rights of the parties in this suit are now barred by reason of the determination in the aforesaid case, and the People's City Mission Home asks that it may go hence and recover its costs.

Thereafter Elmer Pelton also filed a supplemental answer and cross-petition. A supplemental answer was also filed by the defendant Claude Parker. Answer was filed by William J. Harrell.

On December 3, 1934, the court dismissed the action as against Claude Parker without prejudice to a new action. The case was tried to a jury on December 3, 4, 5 and 6, upon which last-named day, at the close of all the evidence, motion to dismiss the defendant's cross-petition against Ben C. Finkelstein was sustained, and Elmer Pelton's cross-petition as to Finkelstein was dismissed.

On December 7 the trial of the case was completed, and the jury were instructed by the court, and on December

the jury returned into court a verdict, finding for the defendant, People's City Mission Home, and against the plaintiff, William J. Harrell, upon his petition, and finding for the defendant Elmer Pelton on his cross-petition, and assessed his damages against the plaintiff, William J. Harrell, in the sum of $5,000, and judgment was entered accordingly.

A motion for new trial was filed by the defendant, Elmer Pelton, in which are set out 16 errors of the court, relating to the dismissal of the action against the impleaded defendant, Ben C. Finkelstein, and in failing to submit to the jury the question of the right of Pelton to recover a verdict and judgment against said Finkelstein. A motion for new trial was also filed by William J. Harrell, alleging 57 errors of the court in the trial of the case.

The evidence is impossible to reconcile. For plaintiff Harrell, the evidence tends to establish that he had just backed out from angle-parking on the south side of O street, from a position which would have been in the middle of Twenty-first street if that street had extended straight through south. He made a left turn and had started north, and was driving this old Whippet in second gear north along the east side of Twenty-first street, and his four witnesses all testify that the accident happened on the east side of the street, and that the Ford, in being driven south, came clear over on the east, or wrong, side of the street, making Pelton and Parker entirely at fault. Harrell had put the brake on his Whippet, and it only moved a short distance backward, while the Ford backed clear over the curb on the east side of the street. Both Pelton and Parker were entirely unconscious after the collision, and Pelton was lying in the street, perhaps jarred out as the rear wheels hit the curb, and neither of them regained consciousness until the next day. Harrell testified that, as the Ford angled over onto the wrong side of the road in front of him, he thought they were friends and trying to play a joke on him, and he put on his brake and ducked down his head and waited.

The evidence of Pelton and his witnesses is to the effect that the Ford was traveling 15 miles an hour, going south on the west side of the street, while Harrell was coming north in the Whippet at 25 to 30 miles an hour, and that Harrell was not looking where he was going, and was waiving to a friend over west, and that he angled clear over to the west side; that, just before the crash, Pelton, seeing no chance to get by Harrell on the west or his own side of the street, turned the steering wheel of the Ford sharply in a desperate endeavor to go past Harrell upon his east, or the wrong, side and avoid a collision; but the evidence of Pelton and his witnesses is that both cars were on the west side of the center when the crash took place. There is testimony that there were pieces of glass, oil and alcohol near the middle line of the street, the largest amount on the west side of the middle line, and none of it over six or seven inches on the east side of the middle line, implying that the Ford was about on the middle line and the Whippet farther to the west, as the collision occurred by the right front fenders of each car coming together. If the Whippet was farther to the west, then Harrell was driving where he should not have been. Pelton's witnesses say that the Ford was hit so hard a blow that it rebounded and made a quarter-circle backwards and came to rest over on the east side of the street, with rear wheels on the curb.

The cross-appellant, William J. Harrell, in his brief insists that; where the verdict of the jury is counter to the physical facts, it will be set aside on appeal, and cites us in support thereof: *Calnon v. Fidelity Phenix Fire Ins. Co.,* 114 Neb. 53, 205 N. W. 942; *Behr v. Duling,* 128 Neb. 860, 260 N. W. 281; *Elwood v. Schlank,* 126 Neb. 213, 252 N. W. 828.

It is necessary, when it is charged that the verdict is not supported by the physical facts, that the evidence be examined by this court, which has been done in this case. We have arrived at the conclusion that there is such a sharp conflict in the evidence that the jury could have

returned a verdict for either side upon the testimony introduced.

There is abundant authority that the verdict of a jury in a law action, based on conflicting evidence, will not be disturbed on appeal unless clearly wrong. *Tidd v. Stull,* 128 Neb. 506, 259 N. W. 369; *LaFleur v. Poesch,* 126 Neb. 263, 252 N. W. 902; *Anderson v. Lotman,* 124 Neb. 795, 248 N. W. 309.

Under our examination of the evidence, we find that the physical facts sustain the verdict reached by the jury.

We have examined the record on the other error argued by cross-appellant on the refusal to allow exhibit No. 9, a picture of the Ford truck, to be received in evidence. This picture was taken some time after the accident, in a garage, and the wheels are seen to be cramped sharply to the right. The witness was unable to testify whether the wheels had been changed after the accident. We find no prejudicial error in the ruling of the court rejecting exhibit No. 9.

We now come to the question, briefed at considerable length by the appellant and cross-petitioner, Elmer Pelton, as to whether the district court committed error in dismissing Pelton's cross-petition against Ben C. Finkelstein. It is insisted that the court should have submitted the question of Finkelstein's liability to Pelton to the jury for determination. It is claimed by Pelton that the evidence shows that the meter in the house on Finkelstein's Vine street property measured the electricity consumed in the house and also that used by an electric light which illuminated the work-yard at the back of the house, and the testimony also shows that the light bill was made out to Finkelstein by the Iowa-Nebraska Light & Power Company, and that the monthly statements were sent to Ben C. Finkelstein at 1901 Vine street. Harrell took Finkelstein's Whippet car to go down to pay this bill. When the company would not accept his money in payment for the month that he lived in the house unless the back bills were paid during the time that a former employee, Hazelton,

had lived in the house, Harrell started to find Hazelton, and found his car in front of Finkelstein's place of business on O street. Hazelton told Harrell he would pay the back bills, but did not have the money just then, and Finkelstein assured Harrell that Hazelton would pay up the back bills, and thereupon Harrell started on the most direct route back to the place where he worked on Vine street. After the accident Finkelstein paid Harrell his regular wages for 12 weeks.

The appellee, Ben C. Finkelstein, insists that the authorities cited do not sustain the contentions made, but that the law of Nebraska applicable to this case is that the plaintiff must show by preponderance of the evidence that the employee in charge of an automobile was, at the very time of the accident, engaged in the master's business, with the master's knowledge and consent.

In the case of *Wise v. Grainger Bros. Co.,* 124 Neb. 391, 246 N. W. 733, an employee was driving a truck home to get his dinner at the time of the accident, while in *Ebers v. Whitmore,* 122 Neb. 653, 241 N. W. 126, employee likewise used a truck to go home for dinner, but after dinner drove to a jewelry store some 22 blocks north of his place of employment to get his watch which he had left to be repaired, on which trip the collision occurred.

The presumption that an employee, driving employer's automobile when accident occurs, is acting within his employment is rebutted, where the evidence shows employee was engaged on his personal affairs. *Hanchett v. Wiseley,* 107 Cal. App. 230, 290 Pac. 311.

The case of *Keebler v. Harris,* 120 Neb. 739, 235 N. W. 328, has been cited in several of the briefs filed in the case at bar. It was there held: "Where an employee in charge of his employer's automobile temporarily abandons his duties and uses it for his own pleasure, the employer may be liable for the subsequent negligence of the employee while the latter is driving the automobile in performing the duties of his employment after resuming them." It is said that the judgment would only be

reversed if the evidence was insufficient to sustain the finding that Harris was engaged in the duties of his employment at the time of the collision. Harris was on an errand with a dual purpose—he was returning from a personal visit to a fraternity house, but he was likewise engaged in returning a repossessed car to a storage garage for his employer. In the case at bar there was no dual purpose. The collision occurred while the employee was returning from a trip to pay his own light bill. His employment for his master would not begin until he reached his place of employment.

A servant may on the same trip combine both his own and his master's business. *Lytle v. Union Gas & Electric Co.*, 24 Ohio App. 314, 157 N. E. 804; *McCormack Bros. Motor Car Co. v. Holland*, 218 Ala. 200, 118 So. 387. In the long note covering owner's liability for injury by automobile while used for servant's own pleasure, found in 68 A. L. R. 1051, it is announced as the general rule that the owner of an automobile is not liable for injury or damage occasioned while the automobile is being operated by a servant on his own business or pleasure without the master's permission or consent. The continuation of the above note, with additional authorities, is found in 80 A. L. R. 725. *Johnson v. Holmen Canning Co.*, 191 Wis. 457, 211 N. W. 157; *Brown v. Montgomery Ward & Co.*, 104 Cal. App. 679, 286 Pac. 474; *McNaught v. Standard Oil Co.*, 128 Neb. 517, 259 N. W. 517; *Bainter v. Appel*, 124 Neb. 40, 245 N. W. 16; *Neff v. Brandeis*, 91 Neb. 11, 135 N. W. 232; *Gray v. Sawatzki*, 272 Mich. 140, 261 N. W. 276; *Wenell v. Shapiro*, 194 Minn. 368, 260 N. W. 503.

The evidence discloses that Harrell required electricity in his home for family use, and that by the terms of his employment he was given the use of the house but was required to pay the electric light bill, and that the payment of this bill was not a service he was rendering to his employer. The evidence discloses that Harrell during the noon hour, which might well be considered his own time, got into one of the second-hand cars of his employer

standing there and expected to go down to the electric light company and pay that bill and return very shortly after one o'clock and resume his work. It occurs to us that Finkelstein had nothing to do with the lights, and the payment of this light bill was no different from the payment of a dry goods bill, or a grocery bill, or a coal bill for merchandise used in Harrell's home, and he was not at the time of the accident engaged in the master's business, with the master's knowledge and by the master's direction, and that the court committed no prejudicial error in relieving Finkelstein of liability in this case.

We have examined all of the errors presented in the briefs, and hereby affirm the several judgments as entered by the trial court.

AFFIRMED.