LEILA M. JENNINGS, ADMINISTRATRIX, APPELLEE, V. EARL CAMPBELL, APPELLANT: LEONARD CAMPBELL, APPELLEE.

6 N. W. (2d) 376

FILED NOVEMBER 20, 1942. No. 31398.

Butler, James & Morrison and Leon L. Hines, for appellant.

*Victor Westermark* and *C. A. P. Falconer, contra.*

Heard before SIMMONS, C. J., EBERLY, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

This is an action for damages, arising from the death of plaintiff's intestate, caused by an automobile collision between a car driven by the defendant Leonard Campbell and the deceased, Henry A. Jennings. The defendant Earl Campbell, owner of the car involved in the accident, is the father of the defendant Leonard Campbell, a minor not yet 16 years old at the time of the accident. Judgment was for the plaintiff. The father alone appeals. The negligence of the defendant Leonard Campbell is not an issue in this appeal. The appeal presents the propositions that the verdict of the jury is not supported by sufficient evidence and is contrary to law.

The evidence necessary to decide the question here presented goes to the use of the car by the son and the liability of the father for the actions of the son in driving the car.

The father's family consisted of his wife, two sons, a daughter and the children's grandmother. The car involved in the accident was purchased in January, 1940, and was used "for the family use." The father drove it as did an older son Lawrence. The son Leonard was not given specific permission to use it. The keys, however, were left, one set in the ignition and one set in a car pocket when it was not in use. The son Leonard had taken it and used it on several occasions prior to April, 1940, about which the father was advised shortly after each use. He had some of his boy friends with him on those occasions. On a Sunday in April, about a month before the accident in question, Leonard had taken the car from in front of the home without his father's knowledge and, accompanied by other boys, had driven it out of town. Mechanical difficulties developed, and the car was pushed home. In the meantime the father had discovered its absence, he and Lawrence went hunting for it, returning home they discovered it had been returned

to the garage. Leonard and the other boys were hiding in the garage. The other boys were sent home, Leonard was punished and was told that he was not to drive the car "any more." The keys at that time were taken out of the car and thereafter remained, except as herein set out, one set in the possession of the father and one set in the possession of Lawrence.

On the morning of May 23, 1940, the father told Leonard to wash the car. He told Lawrence to drive it out of the garage for that purpose. That was done. Leonard asked the father for the keys so that he could turn it around in the washing. The father gave the keys to him and went to his place of business. Leonard took the car to the schoolhouse a few blocks from the home, parked it, took the keys with him and went in to take an examination. The father, driving another car called a "pick-up" and used in his business, passed the schoolhouse about 10 a. m. and saw the car parked at the school, with a number of boys sitting in it. He asked about Leonard and was told that he was taking an examination. He told the boys to tell Leonard, when he came out of the examination, to take the car back home. This message was given to Leonard by one of the boys. Leonard said that he thought he had heard the pick-up. Others of the boys told Leonard that the father left no such message. Leonard, with several of the boys in the car, drove it through town to the swimming hole, found the water too cold to swim, decided to take a different road home, and while driving at 80 miles an hour on a country road ran into the Jennings car, causing the severe injuries to Jennings from which his death occurred several weeks later.

It is clear that the father had, prior to April, 1940, known that Leonard was using the car for extended trips and was accompanied by some of his boy friends; and the testimony of the father and Lawrence is that after the trip in April, 1940, Leonard was positively forbidden to further drive the car. The father appears to have had some doubt about the efficacy of his instructions for he removed access to the keys from Leonard.

On the morning of the accident, however, he placed the keys in Leonard's possession and made it possible for Leonard to drive the car if he again saw fit to disobey his father's orders. Leonard disobeyed those instructions. The father discovered that fact when he found the car at the schoolhouse. He did not regain possession of the keys, he allowed Leonard to keep control of the car, he did not instruct him not to drive the car, but rather left instructions that Leonard was to drive the car "back home." The father testified that he thought Leonard would do as he was told. Leonard did drive the car, but in doing so went on a trip not specifically authorized, and while so doing the fatal accident occurred.

Is the father liable under the family purpose doctrine, which this court has followed and stated as follows: "Where the head of a family has purchased or maintains a car for the pleasure of his family, he is, under the so-called 'family purpose' doctrine, held liable for injuries inflicted in the negligent operation of the car while it is being used by members of the family for their own pleasure, on the theory that it is being used for the purpose for which it is kept, and that in operating it the member of the family is acting as the agent or servant of the owner. * * * Where the car is kept for the use and pleasure of the family, and one member of the family is using it for his individual pleasure, or for one of the family purposes for which it is kept, it comes strictly within the reason of the rule that, in such use, the member of the family is acting as the agent, in furthering the purposes of the owner, as truly as though other members of the family were in the car with him, and that the owner can be held responsible for damages resulting from the negligent operation of the car while so used." *Linch v. Dobson,* 108 Neb. 632, 188 N. W. 227. See, also, *Stevens v. Luther,* 105 Neb. 184, 180 N. W. 87; *Hogg v. MacDonald,* 128 Neb. 6, 257 N. W. 274.

Defendant advances the proposition that the family purpose doctrine has no application where the car is taken surreptitiously or in violation of orders, or where the general

authority to drive has been specifically revoked. Defendant states that the evidence is undisputed on that point. Here, however, the car was not surreptitiously taken, nor taken in violation of orders. Here the defendant knew that the son had the keys, the car, the control and the propensity to drive it, and while it may have been taken to the schoolhouse by the son in violation of orders, it was definitely driven away from the schoolhouse in compliance with defendant's orders. The prohibition against driving had been specifically revoked by orders to drive the car from the schoolhouse to the home. With this distinction in mind it is clear that *Dow v. Legg,* 120 Neb. 271, 231 N. W. 747, and cases cited from other jurisdictions sustaining the rule contended for are not in point under the facts testified to in this case.

The defendant's next contention is that the owner of a family purpose automobile is not liable where it is driven to a place other than that where the owner directs it to be taken. Here the defendant again advances the contention that the evidence is undisputed on that point. The evidence is that the son was directed by the father, through the other boys, to take the car back home. There is neither evidence that the son asked authority to take the car for a ride, nor that the father denied him that right. While the denial of that permission might be implied from the instruction to take the car home, there is also ample evidence from which it could be found that the father should have known that the son would use the car exactly as he did use it.

Where the testimony that the driver of a family purpose car did not have permission to use it is undisputed by other parol testimony the jury have the right to test the credibility of the witnesses by their self-interest and to weigh that testimony against facts and circumstances in evidence from which permission to drive may properly be inferred. *Jensen v. Fischer,* 134 Minn. 366, 159 N. W. 827; *O'Dea v. Amodeo,* 118 Conn. 58, 170 Atl. 486.

In *Galpin v. Fisher,* 109 Neb. 700, 192 N. W. 205, the case was not submitted to the jury on the family purpose doctrine. However, there the testimony was that the father had

given permission to his sons to drive, with positive directions limiting the use of the car. In disobedience of his orders the sons drove the car to other than permitted places, and the father contended that he was not responsible for acts committed during such unauthorized use. We there said: "The evidence was such that, if the case had been submitted to the jury on the theory that the father had furnished the automobile for the customary convenience and pleasure of the family, under the rule adopted by this court in *Stevens v. Luther*, 105 Neb. 184, and *Linch v. Dobson*, 108 Neb. 632, the jury might have found the father liable." While the proposition here presented was not there directly involved, we believe the statement to be correct and consistent with our previous holdings in family purpose cases.

Defendant relies upon the case of *Vaughn v. Booker*, 217 N. Car. 479, 8 S. E. (2d) 603, 132 A. L. R. 977. In that case the son had specific directions not to drive the car in the city of Raleigh. In violation of instructions he drove in the city and an accident resulted. It was held that the father had the right to limit the locality in which the car could be driven. However, in *McCann v. Downey*, 227 Ia. 1277, 290 N. W. 690, a son was permitted the use of a car to go to a choir meeting and a high school "pep" meeting. During the evening the son with some of his school friends went riding into the country and an accident occurred. Specific authority to drive at the place was not shown. The court held that a jury question was presented. In *Evans v. Caldwell*, 184 Ga. 203, 190 S. E. 582, a minor son was permitted to drive a car to a picture show, with the understanding that he would come home immediately after the show. After the show the son started to a near-by community to attend a dance and an accident happened while on the journey. The court there said: "The application of the law of master and servant or of principal and agent to the 'family-car doctrine' is not without difficulty. However, the courts of this state are committed to that doctrine. If the automobile is a family-purpose car, and used by the minor children for their pleasure, comfort, and enjoyment, the car, when used

for such purposes is being used in the prosecution of the business of the parent or master, and the children are acting within the scope of their employment in the parent's or master's business. If the car is used for such purpose with the permission and consent of the parent, either express or implied, even though on the particular occasion the parent limits the use of the car to a particular destination and return, such limitation is not a limitation on the *purpose* for which the car is being used. The purpose for which the car is being used and for which consent is given is the pleasure, comfort, and enjoyment of the child. Therefore, if the child disobey the parent and use the car for the same purpose but in a different locality, he is still engaged in the business of the parent, and the parent is liable for the negligence of the child while so engaged. So long as the child uses the car for the *purposes* of pleasure, comfort, and enjoyment, no question of deviation arises, but only a question of disobedience of instructions." While here it may be said that the son's use, so far as verbal instructions given were concerned, was limited to taking the car "back home," still that would not change its characteristic as a "family use" car. To have the car at home was a part of that use. It retained that classification at all times here considered, and its use was subject to the family purpose doctrine.

Defendant points out that in *Hogg v. MacDonald,* 128 Neb. 6, 257 N. W. 274, we quoted with approval the statement from 64 A. L. R. 879, that "The doctrine is a development of the rules applicable to the relation of master and servant and principal and agent, which have been extended to meet a new situation brought about by the invention of the automobile," and argues that the rules applicable to master and servant and principal and agent apply, and that where there has been a substantial deviation in route by the servant from the place where he was authorized to drive the master or principal is not liable, citing *Ebers v. Whitmore,* 122 Neb. 653, 241 N. W. 126, and *Harrell v. People's City Mission Home,* 131 Neb. 138, 267 N. W. 344. To accept this contention would be to deny the full force of the family pur-

pose doctrine which this court has adopted. That the family purpose doctrine is a development from and is not a restatement of the rules of principal and agent or master and servant is clear from all of the authorities. In 5 Am. Jur. 704, sec. 365, it is stated: "The doctrine undoubtedly involves a novel application of the rule of *respondeat superior* and may, perhaps, be regarded as straining that rule unduly. There are, however, undoubted practical considerations in favor of the doctrine, since it puts the financial responsibility of the owner behind the car while it is being used by a member of the family, who is likely to be financially irresponsible, in the pursuit and furtherance of the purpose for which the car is kept, *and since it relieves the injured person from the difficult task of meeting the owner's claim that upon the occasion in question, the car was not being used for his pleasure or business.*" (Emphasis supplied.) In *Durso v. A. D. Cozzolino, Inc.*, 128 Conn. 24, 20 Atl. (2d) 392, the supreme court of that state held that the rule is based "upon grounds of public policy and in analogy to the principles governing agency" and was "in the nature of an exception to the general principle that one who permits another to use his car does not thereby become liable for the negligent conduct of that other, unless in driving it he is pursuing an agency or employment for the owner."

In *Linch v. Dobson*, 108 Neb. 632, 188 N. W. 227, we quoted with approval this statement from *King v. Smythe*, 140 Tenn. 217, 204 S. W. 296: "If an instrumentality of this kind is placed in the hands of his family by a father, for the family's pleasure, comfort, and entertainment, the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can substantial justice be attained."

To adopt the theory of the defendant in this case would be in effect to modify the family purpose rule so as to require a plaintiff to be in a position to prove that the driver of a family purpose car had authority of the owner to drive the car at the time and at the place of the accident. The rule is not so restricted.

The evidence presented a jury question. The defendant is not entitled as a matter of law to a judgment in his favor. The judgment of the trial court is affirmed.

AFFIRMED.