WOOD RIVER BANK V. JOHN KELLEY.

[FILED MAY 20, 1890.]

1. **Evidence:** IMPEACHMENT OF WITNESS: FOUNDATION.   In
order to lay a sufficient foundation for the introduction of evi-
dence to contradict the statement of a witness, as to a statement
alleged or denied by him, it is indispensable that the witness's
attention be called to the declaration alleged or denied to have
been made, and that the time and place, when and where, and
the person to whom such statement should have been made be
cited.   All of which must be done with reasonable certainty.

2. ———: AGENT'S DECLARATIONS: NOT ADMITTED AGAINST
PRINCIPAL.   Where an agent had in his possession a chattel
mortgage on certain cattle, and was, as the agent of the mort-
gagee, making investigations with a view of foreclosing the
mortgage upon certain cattle then being shipped by the mort-
gagor to other parties, and expressed the opinion that the cattle
to be shipped were the same cattle described in the mortgage;
and in a subsequent action brought by a third party against the
mortgagee for the possession of other cattle claimed by the
mortgagee to be the cattle described in said mortgage: *Held,*
That such expression of opinion by the agent was not admissi-
ble in evidence against his principal.

3. **Instructions** given and refused examined, and *held,* rightly
given and refused.

ERROR to the district court for Hall county.   Tried be-
low before HARRISON, J.

*James H. Woolley,* and *Thummel & Platt,* for plaintiff in
error.

*Thompson Bros.*, and *O. A. Abbott, contra.*

COBB, CH. J.

This action was brought in the district court of Hall county by the Wood River Bank against John Kelley for the possession of fifty head of cattle in which the plaintiff claimed to have a special property by virtue of two chattel mortgages given by the general owner, and exhibited, and in which the property is described as " 50 head of two and three year old steer cattle of various colors and brands," and which was alleged to be of the value of $2,000, wrongfully detained by the defendant, to the damage of the plaintiff in the sum of fifty dollars.

The defendant answered by a general denial.    There was a trial to a jury which found "that at the commencement of this suit the defendant had a special ownership in the cattle in controversy and was entitled to the possession thereof, and fixed the value of defendant's interest at $2,056.54, and found the value of the cattle to be $1,937.20, and defendant's damages, by reason of the taking, to be $50."

The plaintiff's motion for a new trial was overruled, judgment was rendered for the return of the property to the defendant, and, in case a return could not be had, " that he recover of and from the plaintiff the value of his interest therein, as found by the jury, the sum of $1,937.20 " and the costs.

The cause was brought to this court by petition in error and upon the following assignments :

1. The court erred in admitting evidence excepted to by plaintiff.

2. In excluding evidence offered by plaintiff.

3. In giving instruction No. 4.

4. In refusing to give instructions Nos. 1 and 2 asked by plaintiff.

5. In overruling the plaintiff's motion for a new trial.

This controversy is between two holders of mortgage liens upon certain cattle, the general ownership of which was held by one Frank M. Hillebrandt.

The first, in point of time, of these mortgages was that of Hillebrandt to the plaintiff, executed July 20, 1886, and recorded July 22, 1886, to secure $4,000 alleged to be due on two promissory notes of even date upon the following described property: "110 two and three year old steers, a portion branded H on the right hip, about sixty in number, the others of various brands, the same being kept on my home farm," indorsed upon which mortgage as introduced in evidence by the plaintiff is the following release:

"For value received I hereby release from the chattel mortgage given to the Wood River Bank by F. M. Hillebrandt July 20, 1886, to secure notes for $4,000, the following chattels and none others, to-wit: eighty acres of corn in the field, and fifty head of two year old cattle of various colors and brands.

"E. C. HOCKENBERGER,

"Oct. 12, 1886. Cashier Wood River Bank."

2. A chattel mortgage of Hillebrandt to Combs, Hanna & Co., recorded August 12, 1886, to secure $2,000, upon the following described property: "60 head of fat cattle now on feed at my farm in Hall county, Neb., the W. $\frac{2}{8}$ of S. W. $\frac{1}{4}$ of sec. 28, and S. E. $\frac{1}{4}$ and E. $\frac{1}{2}$ of S. W. $\frac{1}{4}$ of sec. 29, all in Tp. 12, R. 11 W."

3. A chattel mortgage of Hillebrandt to John Kelley, executed October 5, 1886, to secure $2,500 upon the following described property: "50 head of two year old steers, part of which are branded with the letter H on right hip, now being fed on my farm in Hall county, Neb.; 120 head of hogs, which are all that I now have on said farm; and it is expressly understood and agreed that if the above cattle and hogs are sold by me I am to pay said

Kelley fifty cents for each steer sold, and the usual commission on the hogs, and if not sold by me they are all to be shipped to said Kelley at the Union Stock Yards, Chicago, Ills." Recorded October 21, 1886. This mortgage is accompanied by a note executed by F. M. Hillebrandt to John Kelley for $2,500, dated October 5, 1886, due February 1, 1887, indorsed "Received on the within note $94.80, January 11, 1887."

4. A chattel mortgage executed October 22, 1886, by Hillebrandt to the Wood River Bank to secure $6,000 for three promissory notes dated July 20, 1886, due January 1, 1887. One of $2,000, due August 19, 1886, signed by Hillebrandt and payable to the order of the Wood River Bank, upon the following described property: "157 head of two and three year old steer cattle of various colors, a field of eighty acres of corn, on sec. 28, Tp. 12, R. 11, all subject to a mortgage of $2,000 in favor of Combs, Hanna & Co., one of $2,000 in favor of John Kelley, and one of $1,826.78 in favor of Clay, Forrest & Co., recorded November 13, 1886."

5. A chattel mortgage executed January 11, 1887, by Hillebrandt to John Kelley for $2,567 on the following described property: "Any and all cattle of all kinds now in my feed yards on my farm, the S. E. ¼ sec. 29, Tp. 12, R. 11 W., in Hall county, Neb., not including 47 head of range cattle, those mortgaged being 50 of the best cattle now in said yards, after the range cattle are taken out; some of them are two years old, the balance three years old, some branded H on the right hip, and some not branded; but the entire 50 are native cattle and are now being fed and fattened by said Hillebrandt on his farm." Recorded January 11, 1887, without note on his mortgage.

It appears from the testimony of Hillebrandt that after the execution and recording of the mortgage to the Wood River Bank of July 20, 1886, on October 5, following, he was still indebted to the bank, and the officers, still hold-

38

ing their mortgage on his cattle, were, to use the words of
the witness, "pushing him a little, and rushing him up,
and wanted some money;" that the witness told them that
he could make arrangements for some money east if they
would release some of his cattle, which they consented to
do if witness would give them some of the money. He
informed them that he had made application to Kelley to
procure from $2,000 to $4,500; that if Kelley could not
let him have the larger sum he would take $2,500 or
$2,000. As nearly as can be gathered from the testimony
of the witness, the bank officers inquired what he wanted
the $4,500 for; and he replied that he would rather Kelley
should have the first mortgage on the Combs-Hanna cattle
that he had given, that he wanted to pay that off, and that
Kelley had written that he would accommodate him; that
he had got $2,500 from Kelley, and had given the note
referred to for that loan; that it was secured on cattle and
hogs; that the cattle were the same involved in this suit,
and that the bank officers released their prior mortgage, in
pursuance of this agreement, on the eighty acres of corn in the
field, and the fifty head of two year old cattle of various
colors and brands; that after giving the mortgage to Kel-
ley securing this note, and the witness thinks about the
first of November following, but is not certain as to the
date, he gave to the Wood River Bank another mortgage,
evidently the mortgage No. 3, herein stated, dated October
22, 1886.

The defendant here offered in evidence on the trial an
Exhibit B, which is the mortgage from Hillebrandt to
Kelley, hereinbefore referred to, dated October 5, 1886,
and the witness stated that that mortgage had never been
released, and that the cattle therein described were the same
involved in this suit, and that he surrendered them to
Kelley on the 26th of January, 1887, on the farm of wit-
ness in Hall county.

It further appears from the evidence of Hillebrandt that

in January, 1887, he signed another note and mortgage to the defendant at the sheriff's office in Grand Island.   In answer to the question why that was done, he stated that he went to ship some cattle, about January 11, and that Watts, who appears from the record to have been an agent of the defendant, and the deputy sheriff of the county, stopped him from proceeding for the reason that Watts was under the impression that the cattle to be shipped were those that the defendant had a mortgage on, and this was the occasion that the second mortgage to him was given; that Watts requested him to make the mortgage plainer than described in the original, and to make the second mortgage so that Kelley would understand it.

It appears from further evidence that this second note and mortgage were executed with the understanding that they would be sent to the defendant in Chicago to be accepted in lieu of the first note and mortgage, or, if not so accepted, to be returned to Hillebrandt; that the mortgage was placed on record by Thompson, Kelley's attorney, and a copy of it, with the note, was sent to Kelley by mail. Hillebrandt testifies that the note was returned to him by the defendant, and by himself destroyed.   He also states that in giving the second mortgage it was not his intention to have the first mortgage released; that it was given only at Watts's request for better security on the property to defendant; that it was sent to defendant, and if he accepted it all right, the other was to be canceled, and if not, this was to be canceled.

The attention of the witness was called to the release of the mortgage, above designated as No. 1, but here marked as Exhibit E, and was asked whether or not it was the release of the cattle negotiated through the Kelley mortgage, to which he answered that it was.   The release was then offered and received in evidence.   Upon cross-examination the witness was asked whether he did not testify, on his examination in chief, that he got $2,000 from Kelley, to

which he answered that he got $2,500, and that the Wood River Bank got all of that money, and was to honor his check for $1,000 to pay off the chattel mortgage on the hogs that he gave to Kelley; that the bank got the balance, he supposes, to apply on his account, and that he did not know exactly how much he owed it at that time.

Q. State if the mortgage to the Wood River Bank, of July 20, 1886, on 110 head of steers which you claimed to be released was wholly released at the time this money was borrowed of Kelley.

A. I got a couple of releases at that time, but I cannot say whether I got the whole of it that day or not, but I think I did.

Q. Do you remember in the month of July last, since this suit was commenced, of being in the Wood River Bank, and having conversation with Hollister and Hockenberger in regard to the cattle in controversy?

A. I don't think I was in Wood River in the month of July.

Q. State whether or not you said to Hollister at that time and place that these cattle they had replevied were theirs; that Kelley, the defendant, had no right to them whatever; that his cattle had been shipped to Combs, Hanna & Co., and that their mortgage was a prior one, or words to that effect?

A. No, I did not tell them anything of the kind.

Q. Did you not state to the parties mentioned, at the same time and place, that the defendant Kelley had no claim to the cattle in controversy, and that they belonged to the plaintiff in this action, or words to that effect?

A. No, I did not tell them anything of the kind.

Mr. Hollister, president of the Wood River Bank, was here recalled, on the part of plaintiff, and examined in rebuttal of the testimony of the last witness.

Q. Do you remember of F. Hillebrandt being present in your bank some time in July last?

A. I remember of his being there, but as to the month it was in I cannot tell.

Q. Do you remember of the conversation between him and you and Hockenberger in regard to the cattle in controversy?

A. I do, but don't remember what month it was in.

Q. State what he said in regard to the cattle, at the time you had the conversation.

To this the defendant objected, as incompetent and immaterial, and not shown to be the same conversation referred to in the question to the witness Hillebrandt, the time and place having been stated to the former witness, and not stated now. The objection was sustained.

Q. State if you heard in that conversation that Hillebrandt stated that these cattle belonged to the plaintiff, and that the defendant had no title to them.

The defendant objected for the same reasons stated. The objection was sustained.

Q. State if at any time since the commencement of this suit you have heard Hillebrandt proclaim that the cattle in controversy belonged to the plaintiff, and that the defendant had no title to them.

The defendant objected, upon the same grounds as before, and for the further reason that the witness had testified that he did not know at what time the conversation happened. The objection was sustained.

Whereupon, the plaintiff offered to prove by the witness that some time in the summer of 1887 the witness Hillebrandt, the mortgagor of the property in controversy, said to this witness, in the Wood River Bank, at Wood River, Nebraska, in the presence of Hockenberger, the last witness examined, that the cattle in controversy were owned by the plaintiff, and that the defendant had no right or title to them.

Objected to, as incompetent and irrelevant, and no proper foundation for the testimony was laid. The objection was sustained.

The exclusion of this testimony by the court is the first error argued by counsel for the plaintiff in error. The first assigned in the petition in error, not being argued, is considered abandoned.

In order to lay a sufficient foundation for the introduction of evidence to contradict the statement of a witness as to a statement alleged or denied by him, it is indispensable that the witness's attention be called to the declaration alleged or denied to have been made by him, and that the time and place, when and where, and the person to whom such declaration should have been made be cited. All of which must be done with reasonable certainty, so that the mind of the witness may reflect upon the fact, and if he denies the making of such statement, after his attention has thus been called to the time, place, and persons involved, another witness may then be called to contradict him; but it is no contradiction unless the interrogatories in both instances agree in time, place, and persons, to such reasonable certainty as to remove all doubt that the denial of the first witness was willfully made. It is believed that in respect to the time of making a declaration or statement, alleged to have been made within a year of the date of trial, it ought to be stated within a few days or weeks, or, at most, a month.

In this case the offer was to prove declarations made some time in the summer of 1887, and was too indefinite to answer the reason of the law.

Again, the evidence, if accepted, was incompetent. It is not claimed that Hillebrandt was the agent of Kelley, the defendant, or that he had the cattle in his possession at any time during the summer of 1887. Had they been in his possession at that time, as the agent or servant of the defendant, his declaration as to the ownership might be considered as a part of the res gesta, but I think not even this, had they been in his possession as mortgagor.

The question, therefore, proposed to the witness Hille-

brandt being immaterial and inadmissible as evidence on the trial, the plaintiff was bound by his answer, and could not, under the rules of evidence, be permitted to call a witness simply to contradict him. This error must, therefore, be overruled.

The plaintiff also presents the question, under this assignment, that it was error on the part of the court to exclude the testmony of the deputy sheriff, R. P. O'Neil, who, on or about January 11, 1887, in company with Watts, defendant's agent, who was in possession of the mortgage, and went to Cairo, a shipping station, for the purpose of foreclosing the Kelley mortgage, as to what Watts said touching the title to the property.

It appears from the evidence that Watts, who resided at Wood River, and who was employed by the defendant to look after certain property interests there, on January 11, 1887, learned that Hillebrandt was shipping cattle away, and sent a telegram to defendant at Chicago to that effect, and that he thought they were the cattle mortgaged to him. This appears from Watts's testimony as a witness called by defendant. He did not state, nor was he questioned by either party as to the reply, if any, the defendant made to his telegram, but testified that he did not know the cattle covered by Kelley's first mortgage; that he had never seen them, but learned that Hillebrandt was forwarding cattle to Combs, Hanna & Co., and was not satisfied that they were not the cattle covered by the mortgage to defendant; that he simply knew that Hillebrandt had cattle on which Kelley had a claim and saw him shipping cattle not unlike those.

O'Neil testified for the plaintiff, in rebuttal, that in January, 1887, he was deputy sheriff of Hall county, and that he was acquainted with Kelley, Hockinberger, Hollister, Thompson, and Watts.

Q. As such deputy sheriff, did the defendant or his attorney place any business in your hands?

Objected to, as not in rebuttal. The objection was sustained.

The plaintiff offered to show by the witne-s that the defendant, through his agent and attorney, placed in the witness's hands, as deputy sheriff, what is known as the Kelley mortgage of October 5, 1886, and sent the witness to foreclose on Hillebrandt's cattle, supposed to be covered by that mortgage. To this offer the defendant objected, as not evidence in rebuttal, and as incompetent and irrelevant; which objection was sustained.

The plaintiff continued the examination as follows:

Q. State whether the mortgage which you went to foreclose covered any cattle in the possession of Hillebrandt, and if so, state where they were.

Defendant objected on former grounds, and the objection was sustained.

The plaintiff offered to prove by the witness that the mortgage in his hands to foreclose described a lot of cattle which Hillebrandt was shipping, at Cairo, to Combs, Hanna & Co., and that the agent Watts so stated at the time, and stopped the shipment.

The defendant's counsel stated that he had no objection to the witness stating, if he knew, whether the cattle described in the mortgage were the cattle shipped by Hillebrandt; but there was no ruling, by the court on the last offer of the plaintiff.

I quote further from the witness's testimony:

Q. State whether the mortgage, then in your possession, described the cattle that Hillebrandt was shipping, or any of them.

A. I don't know that I can testify to that fact; there was a lot of cattle—my recollection of the mortgage is that they were described as two year olds; I can't swear as to two or three year olds.

Q. State what was in the mortgage at that time, whether any of the cattle, then being shipped, were described.

A. I only know what Watts said; I saw the cattle and went over them with Watts, but at that time did not have the mortgage, and think Watts had it in his possession.

Q. State, then, what Watts said as to the description of the cattle in the mortgage.

The defendant objected, as improper rebuttal evidence and as calling for the opinion of another, introducing hearsay evidence. The objection was sustained.

The plaintiff then offered to show by the witness that at the time he went to foreclose the so-called Kelley mortgage, at Cairo, in January, 1887, Watts admitted to the witness that the cattle Hillebrandt was then shipping, or intended to ship, were the cattle covered by the mortgage mentioned. To which the defendant objected, as improper and irrelevant, and the objection was sustained.

The plaintiff insists, in the brief of counsel, on the objection and argument to the overruling of the last offer of proof of the last witness. I have found no accepted rule of evidence under which the testimony offered was admissible. It is true that, in some sense, both Watts and the witness were at that time acting, or assuming to act, as the agents of defendant. Neither had the cattle in possession; neither had ever seen the cattle. Watts had reason to believe that Hillebrandt, the debtor to defendant, was shipping off cattle, and was not satisfied that they were not the cattle mortgaged to defendant, and therefore procured the assistance of the witness, as deputy sheriff, to ascertain the truth of his suspicions, and, if necessary, to assist in protecting the rights of the defendant. Neither had the means of identifying the cattle, or of ascertaining certainly if they were the same mortgaged, except the word of Hillebrandt and the—in any case—doubtful test of comparison of a car load of cattle with the inexact description of a chattel mortgage, made several months before.

It cannot be seriously contended, it appears to me, that statements made by either of these witnesses to the other

as to whether the cattle shipped were the same cattle mort-
gaged, ought to bind the defendant, or in any degree tend
to prove the ownership of the property.   I have carefully
examined the authorities cited to this point, Story on
Agency, sec. 134, and Greenleaf on Ev., sec. 113, and am
of the opinion that they are far short of the doctrine con-
tended for, and more especially if considered with the
doctrine and authority of the succeeding section of the last
author:

"Sec. 114.  Declarations of agents.—It is to be observed
that the rule admitting the declarations of the agent is
founded upon the legal identity of the agent and the prin-
cipal; and therefore they bind only so far as there is au-
thority to make them.  Where this authority is derived by
implication from authority to do a certain act, the declar-
ations of the agent, to be admissible, must be part of the
*res gestæ.*   An authority to make an admission is not neces-
sarily to be implied from an authority previously given in
respect to the thing to which the admission relates.   Thus
it has been held, that the declarations of the bailee of a
bond, entrusted to him by the defendant, were not admis-
sible in proof of the execution of the bond by the bailor,
nor of any other agreements between the plaintiff and de-
fendant respecting the subject.   The *res gestæ* consisted in
the fact of bailment, and its nature; and on these points
only were the declarations of the agent identified with those
of the principal.   As to any other facts in the knowledge
of the agent, he must be called to testify, like any other
witness."

Applying the rule thus laid down to this case, then any
declaration by Watts as to his right to foreclose the mort-
gage then in his possession, or to do any other lawful act
in connection with it, would be a part of the *res gestæ* in a
case in which his authority, and the fact of the statement
made by him, might be drawn into dispute; but would be
no evidence of the execution of the mortgage, or of its

meaning and intent, and certainly not of the identity of the property described as to these, not his opinion or belief, as given out of court, but his testimony before the court, would be required.   The point must therefore be overruled.

The third assignment of error, is upon the giving of the fourth instruction to the jury as follows:

"In this case both parties claim the property under chattel mortgages, and you will first ascertain whether or not the property in controversy was covered by both mortgages. If you find that the property was covered by both mortgages, then you are instructed that the plaintiff, holding the second mortgage, would not be entitled to possession as against John Kelley, the defendant, unless you shall find that defendant's mortgage had been released at or before the beginning of this suit."

The plaintiff argues that this instruction is misleading, by the use of the adjective *both*, limiting and defining the mortgages of the parties.   The objection is not that the instruction contains false statements of law, but that it tends to mislead the jury, inasmuch as *three* mortgages had been mentioned.   Such being the objection it is important that the instruction be considered in the light of others given at the same time, and for this the 5th, 6th, 7th, and 8th are here inserted.   Attention is particularly called to the latter clause of the eighth instruction, and I will add that though the fourth, considered separately, in the use of the words "*both* mortgages," instead of *all*, might tend to mislead the jury, yet, taking the whole charge of the court into consideration, the instruction is not open to the objection.

"5. If a second mortgage be taken by the mortgagee for the same debt, on the same or different property, it does not of itself cancel or extinguish the first, so that an intervening mortgage will take precedence of the first, unless the second mortgage, either by direct implication or expressly from its terms releases the first.   If, however, the parties

agree that the second mortgage is to be received in satisfaction, or is to extinguish or cancel the first one, then such would be the effect of the taking of the new mortgage.

"6. If you find that the defendant took a new note and mortgage of F. M. Hillebrandt on the property in controversy, and it was the understanding between them that the new mortgage was to be taken in satisfaction of the old, or first one, and to extinguish or operate as a cancellation of the same, and the plaintiff had taken and duly filed in the clerk's office of Hall county a mortgage on the same property prior to the time the defendant took and filed his second mortgage, then such intervening mortgage of the plaintiff would take precedence of that of defendant and be a prior lien on the property.

"7. If you find that the plaintiff had a mortgage upon the cattle in controversy, duly filed in the office of the county clerk, and that it was entitled to possession of the same, and that the mortgage of defendant, to which the plaintiff's mortgage was by its terms made subject, had been canceled, released, or the lien of the same extinguished, or that the cattle upon which the John Kelley mortgage was given had been shipped away, then you shall find for the plaintiff.

"8. If you find that the defendant had a mortgage on the cattle in controversy, duly filed, according to law, in the office of the county clerk, and the same was a prior lien to the mortgage of plaintiff, and that he was entitled to the possession of said cattle under said mortgage, and that the cattle in controversy were the cattle included in John Kelley's first mortgage, then you will find for the defendant."

On the trial, the plaintiff's motion to instruct the jury as follows was overruled and the instructions were refused:

"1. The jury are instructed that the defendant claims possession of the cattle in controversy from the fact that he held a prior mortgage to the plaintiff. That if you find

that the defendant had a mortgage on fifty head of two year old steers, part of which were branded with the letter H on the right hip, now being fed on my farm in Hall county, Nebraska, and that said cattle were mixed and mingled with a large number of cattle of the same kind, and the same were never set apart or divided before the mortgage on 157 head was given to plaintiff, and that these 50 head in controversy were among the 157 head at the time the said Hillebrandt gave the plaintiff the mortgage on the 157 head, and that the 157 head were all that Hillebrandt was possessed of, then, under the law, the mortgage of defendant on the 50 head was so indefinite that the mortgage of the plaintiff on the 157 head, all the cattle of Hillebrandt, is prior to defendant's mortgage, and you should find for the plaintiff.

"2. The jury are instructed that if you find that it would be impossible to take the mortgage of the defendant, and by inquiry, from description in said mortgage, go to the place of the defendant's cattle, and from one hundred and ten head select the said fifty head then the said description is so indefinite that the said mortgage did not cover any of the cattle under the law, and a subsequent mortgage given to plaintiff on 157, it being all the cattle owned or possessed by mortgagor, would hold the said cattle in controversy, and be prior, under the law, to defendant's mortgage."

In considering the fourth error assigned I will briefly review the leading facts.

On July 20, 1886, Hillebrandt was indebted to the plaintiff in the sum of $4,000, and to secure which gave the mortgage on the property described as 110 two and three year old steers, part of them branded H on the right hip, 60 in all, the others of various brands, the cattle being then kept on the mortgagor's *home* farm. Afterwards the plaintiff, through its officers, was anxious to have the mortgage, or a part of it, paid off, and the officers were

crowding the debtor for the whole, or for what they could get, of the money.  He informed them that he could obtain a loan from a party east, referring to defendant, of an indefinite sum, from $2,500 to $4,500, if they would release their mortgage as to some of his cattle.  This they promised to do, providing he would pay to the plaintiff a portion of the money, which he agreed to.  Pursuant to this understanding they released the mortgage on October 12, to a portion of the cattle; and about that time, in accordance with the release then made, or promised to be made, Hillebrandt executed to the defendant the mortgage dated October 5, for the consideration of $2,500, on property described as "fifty head of two year old steers, part of them branded by letter H on right hip, and then fed on the mortgagor's farm in Hall county."  All of this sum of $2,500, received by the mortgagor from the defendant as the consideration, was paid over to the plaintiff, but it appears that, subsequently, $1,000 was again returned to Hillebrandt.  It is probable that the money was not paid over by the defendant until after the date of the mortgage of October 5, and that may account for the fact that the release referred to is dated October 12.  Subsequently to the Kelley mortgage being placed on record, October 22, following, Hillebrandt executed a second mortgage to the plaintiff, whereby, for the consideration of $6,000, he mortgaged to it property described as "157 head of two and three year old steer cattle of various colors, and a field of 80 acres of corn on sec. 28, Tp. 12, R. 11 W., subject to a mortgage of $2,000 to the firm of Combs, Hanna & Co., one of $2,000 to John Kelley, and one of $1,826.78 to the firm of Clay, Forrest & Co."

While it is believed that the instructions asked by the plaintiff's counsel, and refused by the court, fairly state the law abstractly, it is not thought that they were applicable to the facts of record and here presented.  The plaintiff, by accepting the mortgage expressly subject to that of the

defendant, ratified it as a valid and subsisting lien upon the property described. It is true that there is a discrepancy as to the amount of defendant's mortgage as stated in that of plaintiff's, but taken in connection with the release of the plaintiff's prior mortgage, the agreement between the plaintiff and Hillebrandt, under which the release was made and the receipt by the plaintiff of the money for which defendant's mortgage was given, and the fact that there was then but one mortgage on record from Hillebrandt to Kelley, such discrepancy is not deemed of controlling importance, and the plaintiff having taken its second mortgage expressly subject to that of the defendant, and especially as the value of the property replevied was less than $2,000, the amount at which defendant's mortgage is described in that of plaintiff's, no principle of law or equity would enable the plaintiff to set up its second mortgage as superior to that of the defendant, nor to defeat it upon a question of description.

In this view of the circumstances of the case, to have given the instructions asked by the plaintiff would have tended to a confusion of the jury, likely to have led to a mistrial and a miscarriage of justice.

It is seldom that I have happened to examine more closely a record so involved as that in this case, but upon the careful consideration of the questions presented I am strongly led to the conclusion that it contains no reversible error. The execution by Hillebrandt of the second note and mortgage to defendant, which were not accepted but returned by him, presents no case which requires further consideration.

The judgment of the district court is

AFFIRMED.

THE other judges concur.