RULE, Plaintiff, vs. JONES and another, Defendants: KRAMER and another, Impleaded Defendants. [Cases Nos. 22 and 75.] *

JONES and another, Plaintiffs, vs. KRAMER and another, Defendants. [Cases Nos. 23 and 76.] *

*November 28—December 30, 1949.*

---

* Motion for rehearing denied, with $25 costs, on March 7, 1950.

104

*Jones & Hamilton* of Dodgeville, for Elwin Rule.

*Kopp & McKichan* of Platteville, attorneys, and *Wilkie, Toebaas, Hart, Kraege & Jackman* of Madison of counsel, for Marcella Jones, Myron Jones, and the Milwaukee Automobile Insurance Company.

*Thomas W. Pierce* and *Riley, Riley & Riley,* all of Madison, for Wilson Kramer and the Rural Mutual Casualty Insurance Company.

FAIRCHILD, J. There are a number of close questions involved on this appeal. The first involves the jury findings of negligence and their apportionment of it. Kramer contends that there is no credible evidence to sustain the jury's

finding that he was causally negligent and that the causal negligence of Mrs. Jones was equal to or greater than his. Mrs. Jones claims that there is no credible evidence to support the finding that she was negligent. These contentions cannot be sustained in view of the following evidence which the jury could and evidently did consider credible.

The road on which the accident occurred ran north and south. Kramer was going north and Mrs. Jones south. A strong wind from the east was blowing snow across the road making visibility very poor. Visibility evidently varied with the wind and the storm. The accident occurred near the top of a knoll where the visibility was particularly poor. Rule testified that at the time of the accident the maximum visibility was seventy to seventy-five feet; Kramer testified that he could see about sixty feet and saw the Jones car emerge from a blind spot created by the blowing snow when it was forty to sixty feet away. The road was covered with from three to five inches of snow so that it was impossible to see the center line. Kramer testified that he determined his position by his familiarity with the road, by the east ditch which appeared as a crease or indenture in the snow, and by the posts and light poles; that he also watched the west ditch, but did not rely on it. While he did this, he said he could see ahead out of the corner of his eye.

The snow clung to the windshield which had a manually operated wiper in use on Kramer's side, and he could see out through the circle made by it. Kramer's side window was down, and to see better he drove with his head out from time to time. Rule testified that Kramer had his head out at the time of the accident. Kramer admitted this before the trial, but denied it at the trial.

Rule testified that when he saw the Jones car it was approaching in a southerly direction on its own side of the road. Just as he saw it, when it was about seventy to

seventy-five feet away, it started to turn and came across to the east side of the road at a forty-five degree angle.

Kramer testified he was on his own side of the road when he first saw the Jones car, that it was in his lane, and that neither vehicle veered but both continued straight ahead. However, he also testified that the left side of his truck was twelve to fifteen feet from the west bank (which, according to the measurements of the road, shoulders, and distance of ditches from the road, would mean that he was partly over the center line and into the west lane). There was testimony that he told a traffic officer who investigated that he tried to turn right to avoid the accident.

After the collision the vehicles were evidently both somewhat in the east lane and were both facing in an easterly direction—the Jones car facing southeast and the Kramer truck northeast. Rule testified that the right front fender of the Jones car collided with the left front of Kramer's truck. From the damage to the vehicles it is difficult to tell whether the vehicles had collided in that manner or whether they had met head on.

There was evidence that tracks were traced back thirty feet from where the Jones car stopped. These tracks were at an angle of thirty-five to forty-five degrees in a northwesterly direction over to the west side of the road indicating that Mrs. Jones had been on her own side. There was evidence of wheel tracks of the Kramer truck in the snow for thirty to forty feet back to the south on the west side of the road indicating that he had been on the wrong side. After the accident the left rear corner of the truck extended so far westward on the west half of the road that southbound cars passing had to be assisted to prevent them from tipping because there was insufficient space left for them to pass between the truck and the edge of the ditch four feet west of the road.

Under the evidence it was within the competence of the jury to determine whether Mrs. Jones was guilty of a failure to exercise ordinary care and to measure the proportion such failure contributed to the result. It was within the province of the jury to find that Kramer was negligent in not keeping a proper lookout for other cars and in being on the wrong side of the road and that such negligence was eighty per cent of the total causal negligence.

The second question involves the conduct of Rule, the guest in Kramer's truck. Kramer claims he assumed the risk of Kramer's negligence. Mrs. Jones contends that, if he assumed the risk, the hazards which he assumed were greater than ordinarily prudent persons usually assume and under *Scory v. LaFave* (1934), 215 Wis. 21, 254 N. W. 643, he was guilty of contributory negligence at least as great as that of Mrs. Jones. She also argues that Rule's conduct was such that Kramer's negligence should be imputed to him. It is our opinion that it cannot be said as a matter of law that Rule assumed the risk of Kramer's negligence.

As was held in *Knipfer v. Shaw* (1933), 210 Wis. 617, 621, 246 N. W. 328, 330, 247 N. W. 320, three elements must be present before a guest can be held to have assumed the risk of his host's negligent acts: "(1) A hazard or danger inconsistent with the safety of the guest; (2) knowledge and appreciation of the hazard by the guest; and (3) acquiescence or a willingness to proceed in the face of the danger." In questions nine and eleven of the special verdict the jury found that the negligence of Kramer as to driving on his right half of the road and as to lookout did not continue for such a length of time that Rule knew or should have known of the danger created thereby. If there is credible evidence to sustain those findings, Rule cannot be said to have assumed the risk of Kramer's negligence.

Kramer testified that he had met and successfully passed other traffic. The weather was not so bad that cars were not traveling. However, there was testimony that, at the knoll where the accident occurred, the east side of the road was being encroached on by fairly deep snowdrifts which extended to about the center of the road. The jury could and evidently did believe that what happened was that Kramer went into the west lane to get around this drift and failed to keep a sufficient lookout for cars coming the other way while in their lane. Such negligence was only momentary, and Rule cannot be said to have assumed the risk of it. *Raddant v. Labutzke* (1940), 233 Wis. 381, 289 N. W. 659; *Helgestad v. North* (1940), 233 Wis. 349, 289 N. W. 822; *Rudolph v. Ketter* (1940), 233 Wis. 329, 289 N. W. 674; *Monsos v. Euler* (1934), 216 Wis. 133, 256 N. W. 630. A jury question was presented and there is credible evidence to sustain the jury finding.

Kramer claims that because Rule, knowing the weather conditions, consented to continue and because he did not protest the way Kramer drove under them, he assumed the risk under *Knipfer v. Shaw* (1933), 210 Wis. 617, 246 N. W. 328, 247 N. W. 320, and *Kimball v. Mathey* (1948), 252 Wis. 194, 31 N. W. (2d) 184. Those cases are clearly distinguishable. In the *Knipfer Case* the fog was so dense that it practically destroyed all visibility, and conditions were so bad that the guest realized that it was almost impossible for the driver to keep a proper lookout for other cars and to maintain a proper position on the highway. In the *Kimball Case* the guest was held to have assumed the risk of the driver's negligent lookout because the driver had been observing the flood waters throughout the trip and the guest knew of and acquiesced in this.

The third question involves the question of whether Mrs. Jones was her husband's agent because she was driving his

car at the time of the accident. Kramer claims that there was prejudicial error committed when the trial court refused to admit evidence and to submit a question to the jury on this point.

It appears without dispute that prior to her marriage Mrs. Jones was teaching school and that she used her own automobile to go to and from school. When she married in July, 1946, she continued to teach and part of the money she earned was devoted to the payment of some household expenses. Because her husband had a car, she sold hers and used his.

Counsel for Kramer offered this testimony to establish that her husband derived pecuniary benefit from the money which she earned, that the car was necessarily used in order to earn this money, and that, therefore, she was acting as his agent.

The question is whether under those facts Mrs. Jones could be found to be the agent of her husband. Agency is defined in the Restatement, 1 Agency, p. 7, sec. 1, as follows:

"Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

Under this definition it seems obvious that Mrs. Jones was not her husband's agent in teaching school. She was acting for the school district which employed her. The statutes relating to married women give her the right to contract to perform services and explicitly provide that the earnings she receives from performing such services are hers and not her husband's. She is free to do with her earnings as she chooses. The fact that Mrs. Jones devoted a part of her earnings to the maintenance of the household made her husband her beneficiary but did not make her his agent. He certainly had no control of her in relation to

the performance of her duties under her contract for which she received compensation. It is clear that she was not acting as his agent in earning the money even if, after she received it, she gave it to him.

Counsel for Kramer cite *Schmidt v. Leary* (1934), 213 Wis. 587, 252 N. W. 151, and *Wilcott v. Ley* (1931), 205 Wis. 155, 236 N. W. 593, in support of the proposition that because Mrs. Jones contributed to the house she was her husband's agent. Those cases are distinguishable on the ground that in both cases the person held to be the agent was performing a task which would devolve upon the principal if he wished to accomplish his immediate purpose.

*By the Court.*—Judgment in favor of Rule against Mrs. Jones, Kramer, and the insurance companies and in favor of Mrs. Jones and the Milwaukee Automobile Insurance Company on their cross complaint for contribution affirmed. Judgment in favor of Mr. and Mrs. Jones against Kramer and Rural Mutual Casualty Insurance Company affirmed.

FRITZ, J. (*dissenting in part in Myron Jones' action against Kramer and his insurance carrier*). The defendants, Kramer and his insurer, contend that Myron Jones derived some pecuniary benefit from Marcella Jones' earnings in teaching school; that in order to have such earnings it was necessary for her to use her husband's car,—as she did with his consent; and that as he derived pecuniary benefit thereby, her negligence was imputable to him. In their answer, the defendants Kramer and his insurer alleged that Mrs. Jones was operating said automobile as the agent of and for the purposes of Myron Jones.

On her attorney's direct examination, Marcella Jones testified:

"I taught school before I was married and when I was teaching school at that time it was necessary for me to drive a car back and forth to school. At that time I owned my own car. . . . After my marriage my husband owned a

car and I sold my car. There was no need for two cars so I sold mine and used his."

On cross-examination by defendants' attorney, Mr. Riley, there were the following proceedings:

Mrs. Jones testified: "The money which I earned was devoted, in part, for household expenses.

"*Q.* And that, of course, redounded to the benefit of your husband. [Objection sustained.] What did you do with the money that you got from teaching school that wasn't put into household expenses?

"The Court: You don't need to answer that—

"Mr. Riley: We would like to make an offer of proof—

"The Court: All right. Make it for the record.

"Mr. Riley: We would like to offer the testimony of Marcella Jones to establish that her husband derived pecuniary benefit from the moneys which she earned teaching school, and that the car of the husband was necessary to use in order to earn the money.

"The Court: In that form, it is denied."

The court's ruling which excluded the offered testimony constituted prejudicial error in my opinion. If by the offered testimony defendants had been allowed to establish that pursuant to an arrangement between Mrs. Jones and her husband she used some part of her earnings to support him and herself or to provide household necessities, which it would otherwise be his legal obligation to do, then such use of the car and the earnings derived thereby were in furtherance of his welfare and he was benefited thereby, and therefore she could be held to be his agent and her negligence was imputable to him. Although, she was entitled, as a married woman, to retain all of her earnings, it was within her rights and power to use them for whatever she desired, including any arrangement between her and her husband by which he would derive some appreciable benefit from her earnings with the use of his car. If the court, instead of denying, had allowed defendants to intro-

duce the offered testimony to establish that by Mrs. Jones' use and driving of his car some benefit inured to Myron Jones, then she could have been considered to be his agent, and her negligence would be imputable to him as the owner of the car. *Wilcott v. Ley* (1931), 205 Wis. 155, 236 N. W. 593; *Schmidt v. Leary* (1934), 213 Wis. 587, 252 N. W. 151. And in that event, twenty per cent of the causal negligence which the jury found was attributable to his wife would have been imputable to Jones, and his recovery should have been reduced by the deduction of twenty per cent of the $7,041 assessed as his damages in the verdict.