MILDRED BARTEK, APPELLEE, v. GLASERS PROVISIONS CO., INC., ET AL., APPELLANTS.

71 N. W. 2d 466

Filed July 15, 1955. No. 33661.

*Kennedy, Holland, DeLacy & Svoboda,* J. A. C. Kennedy, Jr., and *Edward A. Mullery,* for appellants.

*Tesar & Tesar,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Mildred Bartek brought this action in the district court for Douglas County against Glasers Provisions Company, Incorporated, and Howard J. Tallman. We shall here-

inafter refer to these defendants as either Tallman or the company. There are two causes of action. The purpose of the first cause of action is to recover the damages plaintiff alleged she personally suffered because of injuries received in an accident involving a car being driven by Tallman and owned by the company. The second cause of action is to recover for damages to her car. The basis for both causes of action is the claim that Tallman was negligent in operating the car he was driving and that such negligence was the proximate cause of the accident which resulted in plaintiff's injuries and damage to her car. Plaintiff recovered a verdict of $3,750 and the trial court immediately entered judgment thereon. Thereafter the company filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. Tallman filed a motion for a new trial. Both motions were overruled. This appeal was taken from the ruling thereon.

The accident here involved occurred about 6:45 p. m. on Saturday, January 17, 1953, in Omaha, Nebraska, at the intersection of Thirty-sixth and Q Streets, Thirty-sixth Street running north and south and Q Street running east and west. Immediately preceding the accident William F. Bartek, husband of appellee, was driving a 1949 Ford club coupé west on Q Street while, at the same time, Tallman was driving a 1950 Oldsmobile coach north on Thirty-sixth Street. Appellee was riding in the car her husband was driving. These two cars collided at about the center of the intersection. As a result plaintiff was injured and the 1949 Ford club coupé, title to which was in her name, was damaged. The intersection of Thirty-sixth and Q Streets was, at that time, controlled by four traffic signals, one at each corner. The signals were operating. Any further statement as to the facts will be made in connection with our discussion of the errors assigned.

The company contends the trial court erred when it overruled its motion for a judgment notwithstanding the

verdict. In considering this assigned error the following principles are applicable:

"A motion for directed verdict or for judgment notwithstanding the verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence." Stark v. Turner, 154 Neb. 268, 47 N. W. 2d 569.

"In an action where there is any evidence which will support a finding for a party having the burden of proof, the trial court cannot disregard it and direct a verdict against him." Stark v. Turner, *supra*.

As it relates to this assigned error the evidence is not in dispute. Tallman was, at the time of the accident, vice-president of the company and employed by it. The company is a Nebraska corporation engaged in the manufacture and sale of foods and provisions with its principal place of business located in Omaha. In January 1951 the company furnished Tallman a 1950 Oldsmobile coach to be used in connection with his work but also permitted him to use it for the pleasure of his family. Tallman kept this car in a garage at his home, which is located at 3821 Polk Street in Omaha. However, the company kept the title thereto in its name. This is the car Tallman was driving at the time of the accident.

Tallman's family consisted of himself, his wife, two sons, and a daughter. Shortly after 6:30 p. m. on January 17, 1953, Tallman and his two sons left their home in the Oldsmobile to attend a movie at the Chief Theatre. In going to the theatre Tallman drove north on Thirty-sixth Street, the intersection of Thirty-sixth and Q Streets being 2 blocks east and 11 blocks north of the Tallman home. The sole and only purpose for the trip was to enable Tallman and his two sons to attend the movies.

We said in Shaffer v. Thull, 147 Neb. 947, 25 N. W.

2d 755: "A person is liable for the negligent operation of an automobile by his servant or agent only where such servant or agent, at the time of the accident, was engaged in his employer's or principal's business with his knowledge and direction." See, also, Neff v. Brandeis, 91 Neb. 11, 135 N. W. 232, 39 L. R. A. N. S. 933; Ebers v. Whitmore, 122 Neb. 653, 241 N. W. 126; Wise v. Grainger Bros. Co., 124 Neb. 391, 246 N. W. 733; Witthauer v. Employers Mutual Casualty Co., 149 Neb. 728, 32 N. W. 2d 413.

And, as stated in Restatement, Agency, § 238, p. 535: "The master is liable only when the instrumentality is being used by the servant for the purpose of advancing the employer's business or interests, as distinguished from the private affairs of the servant. Thus, a master who purchases an automobile for the convenience of his servants is not subject to liability when a servant is using it for his own purposes; * * *."

In view of the foregoing principle, which is controlling of the situation disclosed by the record insofar as it relates to the company, we find the trial court erred in not sustaining the company's motion for a judgment notwithstanding the verdict and in failing to dismiss the action against it.

Appellants contend the trial court erred in allowing appellee to impeach certain of their witnesses by the introduction of testimony they had given prior thereto at a hearing in the South Omaha police station on January 24, 1953, at which hearing they testified about chasing a car up Railroad Avenue on the evening of January 17, 1953.

Appellants called police officer William G. Hopkins and patrolman James Elder of the Omaha police force as witnesses. They testified that on the evening of January 17, 1953, they were traveling about the streets of Omaha in a cruiser car checking traffic; that they were called to the accident herein involved at Thirty-sixth and Q Streets and arrived there about 6:50 p. m.; that when they arrived there they recognized the blue Ford.

coupé involved in the accident as a car they had been chasing up Railroad Avenue; that they identified it through various means, including the license number; that when they were chasing this car up Railroad Avenue it was traveling at a very high rate of speed and being driven in a reckless manner, that is, swerving in and out among cars it was passing; and that they lost it at Twenty-fifth and U Streets when it passed a truck.

The only purpose this testimony could serve was to show the Ford coupé involved in the accident was being driven at a high rate of speed and in a reckless manner just before the accident. For that purpose this evidence was too remote both in time and distance and was clearly incompetent and immaterial.

In rebuttal appellee produced as a witness E. G. Woodbury, an official court reporter, who took the testimony of these two witnesses when they testified under oath at the hearing held in the South Omaha police station on January 24, 1953. At that hearing Woodbury states patrolman Elder testified they were only able to get part of the license number of the blue Ford they had been chasing north up Railroad Avenue on the evening of January 17, 1953, and that they had lost it at Twenty-fifth and W Streets. Woodbury also testified that police officer Hopkins stated that his testimony would be substantially the same and that he could not add anything to what patrolman Elder had testified to.

This evidence is clearly impeaching and was admissible for that purpose, subject to the following principle, if the evidence of the officers had been competent and material:

"Before a witness, not a party to the suit, can be impeached by proof that he has made statements contradicting or differing from the testimony given by him upon the stand, a foundation must be laid by interrogating the witness himself as to whether he has ever made such statements." Meyers v. State, 112 Neb. 149, 198 N. W. 871.

"In order to lay a sufficient foundation for the introduction of evidence to contradict the statement of a witness, as to a statement alleged or denied by him, it is indispensable that the witness's attention be called to the declaration alleged or denied to have been made, and that the time and place, when and where, and the person to whom such statement should have been made be cited. All of which must be done with reasonable certainty." Wood River Bank v. Kelley, 29 Neb. 590, 46 N. W. 86. See, also, Hanscom v. Burmood, 35 Neb. 504, 53 N. W. 371; Zimmerman v. Kearney County Bank, 59 Neb. 23, 80 N. W. 54.

As to police officer Hopkins we think these requirements were fulfilled with reasonable certainty but as to patrolman Elder they were not. However, before an error requires a reversal, it must be determined that it was prejudicial to the rights of the party against whom it was made for every error does not require a reversal. Here, as already stated, the testimony of these officers in this regard was incompetent and immaterial and for one of them to be improperly impeached in regard thereto cannot result in prejudicial error. While we find error occurred as to the impeachment of patrolman Elder we do not find it was prejudicial to appellants having had a fair trial.

Appellants complain of the fact that the court failed to fully submit the issue of contributory negligence. This complaint is based on two theories: First, that a wife as a guest in a car being driven by her husband may be responsible for the consequences of her own negligence, if any, and second, on the theory that her husband's conduct, under the circumstances here established, may be imputable to her.

We have said:

"The negligence of a person while driving an automobile with another as his guest may not ordinarily be imputable to the guest, but such guest may be responsible for the consequences of his own negligence."

Kuska v. Nichols Construction Co., 154 Neb. 580, 48 N. W. 2d 682. See, also, Davis v. Spindler, 156 Neb. 276, 56 N. W. 2d 107; Styskal v. Brickey, 158 Neb. 208, 62 N. W. 2d 854.

"The negligence of a husband while driving an automobile with his wife as a guest may not be imputable to her, but she may be responsible for the consequences of her own negligence in failing to warn him of known approaching danger or for failure to protest against his recklessness." Crandall v. Ladd, 142 Neb. 736, 7 N. W. 2d 642.

However, in this regard, we have said:

"Ordinarily, the guest passenger in an automobile has a right to assume that the driver is a reasonably safe and careful driver; and the duty to warn him does not arise until some fact or situation out of the usual and ordinary is presented." Lewis v. Rapid Transit Lines, 126 Neb. 158, 252 N. W. 804. See, also, Hamblen v. Steckley, 148 Neb. 283, 27 N. W. 2d 178.

"The duty of a guest riding in an automobile is to use care in keeping a lookout commensurate with that of an ordinarily prudent person under like circumstances. The guest is not required to use the same degree of care as devolves upon the driver. If the guest perceives danger, or if at certain times and places should anticipate danger, he should warn the driver. Ordinarily the guest need not watch the road or advise the driver in the management of the automobile." Styskal v. Brickey, *supra*. See, also, Kuska v. Nichols Construction Co., *supra*.

The car in which appellee was riding was being driven down a surfaced city street, the paved portion of which was 40 feet wide. While it was dark and cold there was nothing that seriously interfered with the driver's vision. As the car approached the intersection, which was controlled by traffic signals, the traffic signals were clearly visible and his driving was in no way interfered with by other traffic on Q Street. In other words the trip,

immediately prior to the accident, was proceeding as would the average trip and involved only such incidents as one would expect on a trip in a car down a city street after dark. Nothing happened that would cause a passenger in a car to anticipate danger about which she should warn the driver and certainly the corner they were approaching presented no such dangerous condition that she should have warned the driver thereof. We find nothing in the record that would justify submitting the issue of contributory negligence of appellee insofar as her conduct is concerned. It would have been error to have submitted it.

On the basis of the family purpose doctrine, joint enterprise and agency, appellants contend appellee was responsible for her husband's driving and that his negligence, if any, was imputable to her. On the basis of this contention appellants requested instructions to the above effect and also instructions on contributory negligence. They contend the trial court erred in denying their request therefor.

The family purpose doctrine does not have for its objective the purpose of defeating a claim for damages by a guest by imputing the negligence of a driver to such guest but rather to impose upon the owner of a car being used for family purposes the responsibility for its operation as a matter of public policy. It has no application here. We have stated these principles as follows:

"The owner of an automobile kept for family purposes is liable for injuries inflicted upon a stranger as a result of the negligent driving of one of his children, where the car is occupied by members of the family and is being used for one of the purposes for which it is kept." Stevens v. Luther, 105 Neb. 184, 180 N. W. 87. See, also, Jennings v. Campbell, 142 Neb. 354, 6 N. W. 2d 376.

"The family purpose doctrine is not a restatement of the rules of principal and agent or master and servant, but rather is a development from those principles." Jennings v. Campbell, *supra*.

"The rule is based upon public policy and is in the nature of an exception to the rule that a master or principal is not liable for the negligent conduct of his servant or agent, unless in driving he is pursuing an employment or agency for the owner." Jennings v. Campbell, *supra.*

"Where a family purpose car is being used by a member of the family and an accident follows from the use, the rule does not make it necessary that the injured party be able to prove that the driver had the authority of the owner to drive the car at the time and at the place of the accident." Jennings v. Campbell, *supra.*

The rule here applicable is as follows: "Where the owner is a passenger in his own automobile while it is being operated by another, the negligence of the operator is not imputable to the owner, except where the operator is the owner's servant or agent, or where the operator and the owner are engaged in a joint enterprise, or where the owner assumes to direct the operation of the automobile and to exercise control over it." Petersen v. Schneider, on rehearing, 154 Neb. 303, 47 N. W. 2d 863.

While other states have held to the contrary we have held that the negligence of a husband, while driving an automobile in which the wife is riding as a guest, may not, merely because of that relationship, be imputed to her (see, Stevens v. Luther, *supra;* Crandall v. Ladd, *supra;* Remmenga v. Selk, 150 Neb. 401, 34 N. W. 2d 757; Hendrix v. Vana, 153 Neb. 531, 45 N. W. 2d 429); that the owner of an automobile may be a guest in his own car (see, Petersen v. Schneider, *supra;* Davis v. Spindler, *supra*); and that the mere fact of ownership is not sufficient to impose that liability (see Petersen v. Schneider, *supra*).

As to joint enterprise we said in Ahlstedt v. Smith, 130 Neb. 372, 264 N. W. 889: "Where two persons unite in the joint prosecution of a common purpose so that each has authority, express or implied, to act for the other in respect to the control of the means to accom-

plish the common purpose, the negligence of one will be imputed to the other."

"To constitute occupants of a motor vehicle joint adventurers there must be not only joint interest in the objects and purposes of the enterprise but also an equal right to direct and control the conduct of each other in the operation of the vehicle." Remmenga v. Selk, *supra.*

As already stated, the title to the 1949 Ford club coupé the husband was driving at the time of the accident was in the name of appellee, it apparently having been purchased in March 1952 as a second-hand car. Appellee was not able to drive so her husband did the driving and, whenever she suggested going some place, he would usually take her. On January 17, 1953, appellee's sister Marie was in the University Hospital in Omaha. She was expecting. It had been planned for the family to visit her that evening. Late that afternoon, at appellee's suggestion, the husband drove to Forty-fifth and Harrison Streets and picked up appellee's parents, Mr. and Mrs. George Cherek, that being where they lived. The husband returned home to 7011 Railroad Avenue. There he picked up appellee and his cousin Stella Schiessl who was visiting them. They left the Bartek home sometime between 6:15 and 6:30 p. m. Mr. Bartek was driving, appellee was riding in the middle of the front seat, and Stella Schiessl to her right while the Chereks occupied the back seat. They first drove north on Railroad Avenue and then on Twenty-fifth Street, crossing Q Street while doing so.

That afternoon appellee had called her sister Betty, who lived at Forty-second and Q Streets, and told her they would pick her up and take her with them to the hospital. Apparently she had forgotten to tell her husband of this arrangement for he did not turn west on Q Street as he crossed it going north on Twenty-fifth Street. She did not think of it until they were approaching the intersection of Twenty-fifth and L Streets. At that time she mentioned to her husband that they had to

pick up her sister Betty by saying: "Oh, we forgot to pick up my sister Betty." Her husband then turned left at the next intersection onto L Street and proceeded west on L Street to Twenty-sixth Street; there he turned left onto Twenty-sixth Street and proceeded south on Twenty-sixth Street until he reached Q Street; then he turned right onto Q Street and proceeded west on Q Street to where it intersected with Thirty-sixth Street or the place of the accident.

We think this presents the ordinary family picture when it is decided to visit either some of the wife's or husband's relatives. In such case either the husband or wife usually makes all the arrangements, depending on whose relatives are to be visited. We certainly can see no agency in this arrangement within the meaning of the principle hereinbefore set forth nor were the parties engaged in a joint enterprise, within the meaning of our decisions, that would justify imputing the husband's negligence, if any, to the appellee. See Remmenga v. Selk, *supra*.

We find no error in the trial court's refusal to submit the issue of contributory negligence to the jury on the theory that the negligence of the husband, if any, could be imputed to appellee. In fact, as stated in Andersen v. Omaha & C. B. St. Ry. Co., 116 Neb. 487, 218 N. W. 135: " 'Where contributory negligence is pleaded as a defense, but there is no evidence to support such defense, it is error to submit such issue to the jury.' Koehn v. City of Hastings, 114 Neb. 106." See, also, Bay v. Robertson, 156 Neb. 498, 56 N. W. 2d 731.

The court should not have given instruction No. 6 nor that part of instruction No. 2 that sets out allegations relating to the claim that appellee was negligent. These are not errors of which appellants can complain but we point them out since a retrial of the case as to Tallman is required.

Appellants complain of the court's failure to give instructions concerning the duties of a driver entering

an intersection. It should be remembered that both drivers, and their corroborating witnesses, testified they entered the intersection on a green traffic signal. The court correctly instructed as to the rights of a driver proceeding into an intersection on a green traffic light and his duties in regard thereto. See instruction No. 7 given by the court and Styskal v. Brickey, *supra.*

However, in view of Tallman's testimony that as he entered the intersection on a green light he saw appellee's car approaching from the east we think the jury should have been advised of the following principle: "A person traveling a favored street protected by a traffic signal, of which he has knowledge, may properly assume that oncoming traffic will obey it." Angstadt v. Coleman, 156 Neb. 850, 58 N. W. 2d 507.

The other contentions in this regard made by the appellants need not be discussed as they were based on the proposition that Mr. Bartek's negligence, if any, would be imputed to appellee.

Appellants alleged the accident, together with the resulting injuries and damages, was not caused by any negligence on their part but was the direct and proximate result of the negligence of appellee's driver. In this regard they requested the following instruction: "You are instructed that if you believe and find from the evidence that the accident in question which is the subject matter of this lawsuit was caused solely by the negligence of the plaintiff's husband in the operation of plaintiff's automobile, then your verdict should be for the defendant."

We said in Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673: "Although the negligence of the driver of an automobile will not ordinarily be imputed to a passenger therein when the passenger has no control over the car or driver, the passenger may not recover from a third person for injuries suffered in a collision when the negligence of the driver is the sole proximate cause of the accident."

As already stated, both drivers contend they entered the intersection on a green light. However, appellee's driver admitted he did not see the car being driven by Tallman until almost the moment of the impact. Under this factual situation we think the trial court should have instructed on this issue and its failure to do so prevented Tallman from having a fair trial.

We therefore reverse the judgment of the district court and remand the cause with directions to dismiss the action as to the Glasers Provisions Company, Incorporated, and for retrial as to Howard J. Tallman.

REVERSED AND REMANDED WITH DIRECTIONS.

SIMMONS, C. J., dissenting.

I concur in the result.

I dissent from the holding of the court that the negligence of the husband driver of the car is not imputed to the plaintiff who was the owner of the car.

Plaintiff pleaded that the accident and her damages were the proximate result of the negligence of the defendants and each of them "without any negligence on the part of the plaintiff or the operator of plaintiff's car in which she was a passenger." Defendants, answering separately, denied generally, and alleged that the automobile in which plaintiff was riding was being driven by her husband as her agent; that the accident and injuries were the direct and proximate result of the negligence of the plaintiff and her driver; and that the negligence of plaintiff's driver was more than slight.

Plaintiff was the owner of the car in which she was riding, which was driven by her husband. The plaintiff does not drive a car and never has driven. The husband operated the car and drove the car for plaintiff whenever she had to go someplace. He was the only one in the family who drove the car. Before the accident, the husband had driven the car to the home of plaintiff's parents, got them, and brought them back to plaintiff's and his home. This was done at the request of the plaintiff. The plaintiff, the husband, his

cousin, and the plaintiff's parents then started to visit a sister of plaintiff who was a patient in an Omaha hospital. The husband was driving, the plaintiff was in the middle of the front seat, with the cousin on the right. Plaintiff's mother and father were in the back seat. They intended to pick up another sister of the plaintiff and take her to the hospital with them. They forgot to pick her up. They then turned their course to go to the sister's home to pick up the sister. The plaintiff asked the husband to pick up the sister. This evidence is undisputed and largely comes from the plaintiff.

Under these circumstances, defendants contend that the negligence, if any, of the driver of the car in which plaintiff was riding was imputable to plaintiff and that the jury should have been so instructed.

The court relies on the rule as stated in Petersen v. Schneider, 154 Neb. 303, 47 N. W. 2d 863. That rule recognizes that the negligence of the operator is imputable to the owner "where the operator is the owner's servant or agent, or * * * where the owner assumes to direct the operation of the automobile and to exercise control over it."

In Petersen v. Schneider, *supra,* we modified the holding in Sutton v. Inland Construction Co., 144 Neb. 721, 14 N. W. 2d 387, which was a case where the owner was riding in his car while it was driven by another. We there held that ownership alone is not sufficient to establish the existence of the relationship of principal and agent or master and servant, pointing out, however, that in the Sutton case there was evidence that the owner was directing the driver and exercising some control over the operation of the car. That evidence is here also.

The court also cites our decisions that the negligence of a husband while driving an automobile in which his wife is a guest is not imputable to her because of that relationship; that the owner of an automobile may be

a guest in his own car; and that the mere fact of ownership is not sufficient to impose that liability. These decisions do not reach to the facts of this case.

Our disagreement here is not as to the rule but its application to the facts as shown by the evidence of the plaintiff.

The court sets out no decision of ours which goes to the fact of the agency of the driver or the fact of the owner directing the operation of the automobile and exercising control over it such as we have here.

Other states have faced those fact questions and decided them contrary to the decision of the court in this case.

There are many cases dealing with this general problem. We have searched out those where we find comparable fact situations. Wilcott v. Ley, 205 Wis. 155, 236 N. W. 593, was a case where the plaintiff husband owned the car. His wife was driving at his request and because he was tired. They were returning from a dance. The court held: "The undisputed evidence discloses that plaintiff's wife, at the time of the accident, was driving his car at his request and rendering a service beneficial to him, which otherwise he would have been obliged to perform himself. We cannot escape the conclusion that she was plaintiff's agent and that her negligence is imputed to him." In reviewing this case in Rule v. Jones, 256 Wis. 102, 40 N. W. 2d 580, that court said that the person there "held to be the agent was performing a task which would devolve upon the principal if he wished to accomplish his immediate purpose." That is the situation here.

Foley v. Hurley, 288 Mass. 354, 193 N. E. 2, was a case where the plaintiff owned the car in which she was riding. It was being driven by a minor son. They were on their way to school, and the plaintiff went for the purpose of driving the automobile back to her home. Plaintiff gave the son no directions as to his operation of the automobile or the route he was to follow. (In the instant case there were directions given by the

plaintiff as to where the car was to be driven.) The question was whether or not the evidence sustained a finding that the son was the plaintiff's agent. The court held: "The fact that she gave no directions as to its operation or as to the route does not have a controlling influence in deciding that question. There is nothing to show that up to the time the collision was imminent any circumstances appeared which called for her exercise of the power of control. The test of the existence of the relationship of principal and agent is the right to control and not the actual exercise of control by the principal. * * * When the owner of an automobile is riding in it while another is driving, in the absence of controlling evidence to the contrary, the inference is warranted that the owner has retained the right to control its operation."

Angel v. McClean, 173 Tenn. 191, 116 S. W. 2d 1005, was a case where the wife owned the car. At the time of the accident the husband was driving, and the wife was occupying the front seat with him. He was going to his work, after which the wife was to take the car, park it, and then walk to the office of her physician for treatment. The accident happened en route to the place where the husband worked. The court extensively reviewed many authorities, and held that the driver's negligence was imputable to the owner-wife. The court quoted this language from Challinor v. Axton, 246 Ky. 76, 54 S. W. 2d 600: " "* * * Clearly, in such a case the owner (which is the wife in this case) by her consent and acquiescence selected her husband as a suitable person to, not only operate her car for her own purpose, but also to guard and protect her personal safety while traveling in her car with him as driver, and since the negligence of a stranger as her agreed chauffeur would be imputed to her, we conclude that the same principles should apply when her selected chauffeur is her husband.' " The language is applicable here.

Lucey v. Allen, 44 R. I. 379, 117 A. 539, was a case where the wife of the driver of the car owned the automobile. The question was whether the negligence of the driver could be imputed to the wife. The court held: "If in this case the negligence of Mr. Prendergast is imputed to his wife, such determination would not be made because of the marital relation, but because she was the owner of the automobile, that it was being operated by the husband for the wife in furtherance of a purpose in which she was an interested party, and because from those circumstances the relation of principal and agent would arise between Mrs. Prendergast and her husband. It appears that at the time of the collision the Prendergasts were returning from a day's outing at Pearl Lake near Franklin, Massachusetts; that for the purpose of carrying out this day of pleasure in which she was interested and took part she had furnished her automobile and being unable to operate it herself she had procured her husband to run it. In accordance with the rule of agency applicable with reference to a so-called 'family automobile,' the owner is undoubtedly chargeable with the negligence of another member of the family who is driving, if the owner is a passenger and it is being used for a purpose in the accomplishment of which the owner is interested. In such circumstances the relation of principal and agent arises between the owner and the member of the family driving the machine."

In Petersen v. Schneider, *supra,* we cited for the rule the sole decision of Rodgers v. Saxton, 305 Pa. 479, 158 A. 166, 80 A. L. R. 280, "and cases cited in the annotation thereto."

The Rodgers case held: "* * * a wife who is riding in her own automobile while it is being driven by her husband is not prima facie chargeable with the husband's negligence in driving the automobile * * *. To hold that the facts, as shown here, constituted agency would be carrying the principle of implied agency too

far. If one is riding in a vehicle with another who is his agent or employee, he is responsible for his acts, but to hold that when a husband drives the car of his wife, she being in it, that he is her agent without any proof of how or under what circumstances he is driving it, is to go much further than the law has done or we are willing to do.' "

Here there is proof of how and under what circumstances he was driving it, which proof in this instance was furnished by plaintiff.

I call attention to the cases cited in the annotation to 80 A. L. R., page 286, under the heading "Car operated by member of owner's family." The author of the annotation states: "The fact that one was riding in his automobile while it was being driven by a member of his family will not necessarily render him liable for an injury resulting from its negligent operation. His liability, apart, from statute, generally depends upon whether the car was being driven by his servant or agent, and his presence in the car is evidence of that fact."

I also call attention to the case of Powers v. State, 178 Md. 23, 11 A. 2d 909, wherein the court held: "If the owner of a car either requests or allows another person to drive while he is occupying it, his request of (or) permission will not of itself exclude his right of control. The owner has the right and the duty to prevent, if possible, the driver from operating the machine in a reckless and dangerous manner. If the car is negligently operated, it is presumed that the owner consented to the negligence. Therefore, in the absence of proof that he abandoned the right of control, he is liable for any damage resulting from the negligence of the driver."

The undisputed evidence in this record requires the conclusion under the rule in Petersen v. Schneider, *supra*, that the negligence of the driver of plaintiff's car, if any, was imputed to the plaintiff.

I submit that the decision in the Petersen case puts this court in accord with the dominant rule in this country. I find no reason for wrapping the cloak of immunity around the owner of a car under the circumstances here.